## Green River Coal Mining Co., et al. v. Brown.

(Decided October 19, 1910.)

Appeal from Ohio Circuit Court.

1. Option Contract—Action to Enforce—Property Rights—Coal Privileges.—In an action to enforce an option contract for coal privileges on a tract of 250 acres of land, with the right of mining and removing all the coal underlying it, and the right for a passway for other coal on other land, for which appellant declined to accept a conveyance tendered by appellee on the ground that it was not underlaid with any coal of workable and merchantable quantity and quality and that it was subject to overflow during high water so that the mine could not be worked; Held, that the contract being in reference to a property right or privilege in the land which might or might not in the future prove to be valuable, it would support an action to enforce it, nothing else appearing.

2. Same—Resistance—Substantial Facts—Burden.—If the enforcement of a contract is resisted, it must be upon some substantial fact which, when established, would show the chancellor that that,

which was otherwise an enforceable agreement was, because of the facts proven, not enforceable in equity, inasmuch as to enforce it in the light of the facts proven would be to work a manifest injustice. The burden of showing the facts necessary to arrest the plaintiff's right of action under the contract was upon the defendant, the contract on its face appearing to be fair, and the facts relied on must be made to appear from the preponderance of all the evidence in the record.

3. Facts to Be Shown—Conflicting Evidence—Burden of Proof.—Appellants contend that the vein of coal found is not workable because the surface of the land is below high water, and the vein too near the surface to be mined. On that score, the evidence is conflicting. The burden of proof was on the appellants, and they have failed to show it. It was within their power to show the exact situation. This they did in such manner as to be not conclusive or even reasonably so. They so' conducted their explorations as to leave the matter in doubt, and they ask the court upon that doubt to relieve them from their performance of the contract. The plaintiff made out a prima facie case; the defendants failed to establish the facts upon which their defense is based. The judgment for the defendant was right.

GLENN & SIMMERMAN, WILSON & CROWE and REESE BLIZZARD for appellant.

W. H. BARNES and S. A. ANDERSON for appellee.

Opinion of the Court by Judge O'Rear—Affirming.

Dudley & Grogg, assignors of appellant Green River Coal Mining Company, optioned from appellee the coal privileges on a tract of 250 acres of land on Green river in Ohio county.

The option agreement provided that upon its acceptance by the optionees they, and their assignees, should have the privilege of mining and removing from the land all the coal underlying it, and the right to use the land for passway for other coal mined by them on other land, as well as for purpose of ventilating mines on other lands. Only the area underlaid with coal was to be paid for, which was to be ascertained by tests and surveys to be made by the optionees. The consideration was $4.00 an acre for the coal area. The title was to be abstracted and the surveys made by the optionees within one year from the date of the written agreement, to be extended not exceeding one year longer in a certain contingency. The option was assigned to appellant company, which within about ten months after the date of the option, and

whilst it was still in force, gave notice to appellee that it elected to purchase the privileges mentioned in the contract on the terms therein stated. Appellant company then caused the title to be examined, and an abstract made of it. The title was found to be unobjectionable. Appellant also caused certain borings to be made in the vicinity of the land of appellee, but on other lands which it had optioned under similar contracts, to determine whether the territory was underlaid with merchantable, workable coal. Appellant company declined to accept a conveyance tendered by appellee, executed in due form after the examinations had been made, whereupon appellee filed this suit in equity for a specific enforcement of the contract.

The only defense made to which any proof was offered, was that the land was not underlaid with any coal of workable and merchantable quantity and quality. Upon that issue proof was taken. The evidence for appellee was that the entire section, comprising several thousand acres, of which the land in dispute formed a part, and was near the center of, was underlaid with at least two seams of workable coal, one known as vein No. 11, having a thickness of about six feet; and the other known as vein No. 9, having a thickness of about five feet. These two deposits of coal underlie the most of that section of country, comprising what is known as the Western Kentucky Coal Field. There are evidences of other veins of workable coal, probably Nos. 1 and 2 which appear in remote sections of that region, and which doubtless underlie this land at a considerable depth. But there was not evidence that either of the latter two veins had been opened or discovered in the immediate vicinity of this land. If they do exist they are, as they are elsewhere, of sufficient thickness to be practically workable. But the borings made by appellant did not go deep enough to explore the region in which they would probably have been discovered if they existed. On the other hand, appellant's evidence tended to show that there was not any coal under the land immediately near the tract in dispute, of workable thickness, unless it was a vein some six feet which lay about fourteen feet below the surface of all appellee's land except about forty acres of it. Appellee's land, except the forty acres named lay in a bottom of the Green River Valley, which was subject to overflow during high water, and is covered by the back water from Green river every

year, and sometimes several times during the year. There was testimony for appellant to the effect that it was impracticable to work such a vein, owing to the danger of flooding the mine, and breaking through its roof by the weight of the water on such a thin surface, composed as that was. Appellee offered testimony of an expert coal operator and mining engineer to the effect that such a deposit could be profitably worked by stripping. On this state of the record the circuit court decreed specific performance, and appellant prosecutes this appeal to reverse that judgment.

The ground asserted by appellant for reversal is that equity will not specifically enforce a contract which is grossly unequal, and which the circumstances show that it would be unjust to enforce. The argument is based on the assumed fact that there is not coal of workable quality and condition under the land, and that therefore it would be taking appellant's money for nothing to require it to perform the contract. Let it be granted that such is the rule in equity, and furthermore that the agreement between these parties contemplated that unless workable veins of merchantable coal did underlay the land, it was not to be taken. Then it would devolve upon the defendant in the suit for specific performance to show the state of facts which in equity would relieve it from its obligation on the contract, or rather, which would justify the chancellor's withholding the relief in equity, which the plaintiff was seeking. For the contract on its face is not unreasonable, oppressive, or unjust. If there was not evidence at all that the land was underlaid with coal, it would nevertheless be competent for the parties to make a binding contract between themselves with respect to its coal privileges, the owner binding himself to convey and the optionee binding itself to buy and pay the agreed price for such privileges. And in the suit by either to enforce the agreement, in the absence of a showing of facts which would arouse the conscience of the chancellor, the agreement would be enforced. To state the case in another way, the contract being in reference to a property right or privilege in the land which might or might not in the future prove to be valuable, it would support an action to enforce it, nothing else appearing. If its enforcement be resisted, it must be upon some substantial fact, which, when established, would show to the chancellor that that which was otherwise an enforceable agreement, was, because of the fact proven, not

enforceable in equity, inasmuch as to enforce it in the light of the facts proven, would be to work a manifest injustice.

The burden of showing the facts necessary to arrest the plaintiff's right of action under the contract, was upon the defendant, the contract appearing on its face to be fair. It is not enough that the defendant introduced evidence of respectable quality to sustain its contention. The fact relied upon must be made to appear from the preponderance of all the evidence in the record. So that, if the evidence should be in equipoise, that is to say, not so convincing either way but that the mind is left in grave doubt concerning the fact, he who has the burden fails. Failure to sustain the plea by sufficient evidence is as fatal to it as the failure of all evidence. Which brings us back to a consideration of the evidence in the record.

That there is coal of from five feet thick upward underlying the land is reasonably certain according to all the proof. Whether it is No. 11, or No. 9, or some other stratum of coal is not so well established. If it is No. 9, then there would be grave doubt whether it was shown that there was other workable veins beneath it. If it was No. 11, then it is reasonably certain that No. 9 would be found somewhere near 80 feet deeper. That is its record throughout all that region. But whether it is No. 11 or No. 9, or some other vein is not clearly shown, because appellant did not so make its explorations on the land as to clear up that point. It saw proper to rest its action in rejecting the land upon the borings made in its vicinity, some of which it refused to divulge the result of. Its conclusion is a mere conjecture as yet, which may be correct, but not proven to be so. If the vein of coal is on the adjoining land of the same altitude and formation, and which it was shown cropped out on still another adjoining tract, laying substantially as the land in dispute does, it is reasonably certain that it exists on this tract also at about the same level. But, appellant contends that at that level the vein is not workable because of the fact that the surface of the land is below high water, and the vein too near the surface to be mined, and too deep to be scaled. On that score, the evidence is again so conflicting that we cannot determine, nor could the circuit court, as shown in its opinion in the case, whether it could be profitably worked. The burden was in this, as in the other feature discussed, upon the defend-

ants, and they have failed to sustain it. It was within the power of the defendants to have shown the exact situation. They had agreed to explore, that is to "survey" the coal deposits. They did so in such a manner as to be not conclusive, or even reasonably so; they so conducted their explorations as to leave the matter in doubt; they now ask the court, upon that doubt, to relieve them from the performance of their contract. They produce no authority and advance no reasons to justify the court's so doing.

Some stress was laid by the circuit court upon the fact that the notice of acceptance was of itself an election to take the coal privileges, and was the equivalent of a declaration that coal had been found in paying quantities. Perhaps the purpose of the notice was to cinch the option as an enforcible executory contract, which would still be subject to all the defenses to which it was liable if signed by both parties when first drawn. Then the surveying had to be done; also the titles had to be examined, and likely enough the fact was still to be ascertained whether coal existed under the land in paying quantities. That, at least, is the most favorable view of the effect of the notice that appellants could argue. The notice did have the effect of converting the option into a contract of bargain and sale. (Murphy Thompson v. Reid, 125 Ky. 585, 10 L. R. A., N. S., 195.) The appellee was then obliged to convey the privileges which were the subject of the contract. Appellant was also bound (1) to abstract the title; (2) to survey the coal area, (3) to pay the agreed price for it. It would not be excused from doing the third because it failed to do either the first or second things required. If the grantor could show (1) that his title was good, and (2) the coal area, the third obligation became absolute. The second named requirement might be shown in any one of several possible ways, either by the admission of optionee, or by evidence aliunde. When it was shown that the coal area was in every probability co-extensive with the plaintiff's boundary, he was entitled to recover the whole of the contract price for the privileges sold, unless the defendant showed exceptional circumstances which would arrest the chancellor's action. The plaintiff made out a prima facie case. The defendants failed to establish the facts upon which their defense was based. The judgment for the plaintiff was right.

Affirmed.